**RadLee F. PAYNE, Plaintiff–Appellant,**

v.

**NORWEST CORPORATION, a Delaware corporation; Norwest Bank Billings, N.A., a Montana corporation; Norwest Bank Great Falls, a Montana corporation, Defendants–Appellees.**

No. 95–36252.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 7, 1997.

Decided May 15, 1997.

David A. Veeder, Veeder Law Firm, Billings, Montana, for plaintiff-appellant.

Linda L. Holstein, Schatz, Paquin, Lockridge & Holstein, Minneapolis, Minnesota, W. Scott Mitchell, Holland & Hart, LLP, Billings, Montana, for defendants-appellees.

Before: WRIGHT, WALLACE, and HAWKINS, Circuit Judges.

**OPINION**

WALLACE, Circuit Judge:

RadLee Payne, a former employee of Norwest Corporation, appeals from the magistrate judge's summary judgment in favor of Norwest. The magistrate judge had jurisdiction under 28 U.S.C. § 636(c)(1). We have jurisdiction over this timely appeal pursuant to 28 U.S.C. § 1291. We affirm in part, reverse in part, and remand.

I

Norwest terminated Payne on February 9, 1994, alleging insubordination. Payne asserts that Norwest's true motivation for firing him was not insubordination, but retaliation for his filing complaints of race, gender, age, and disability discrimination with the Montana Human Rights Commission (MHRC). Payne also alleges that Norwest terminated him due to his race, gender, age, and disability. The summary judgment dis-

posed of all of Payne's discrimination and retaliation claims. *Payne v. Norwest Corp.*, 911 F.Supp. 1299 (D.Mont.1995) (*Payne*). In unpublished orders, the magistrate judge also ruled in favor of Norwest on a series of evidentiary issues. We review a summary judgment de novo. *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir.1996).

## II

We affirm the magistrate judge with one exception: Payne's retaliation claim. We agree with the magistrate judge that Payne established a prima facie case of retaliatory discharge under *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 891 (9th Cir.1994). He was engaged in a protected activity (he filed an MHRC complaint), he was then subjected to an adverse employment action (Norwest fired him), and the timing of his termination creates an inference of causation (he filed the MHRC complaint on January 31, 1994, and Norwest fired him on February 9, 1994).

Under *Wallis, id.* at 889, the burden of production shifted to Norwest to offer a legitimate reason for Payne's termination, which it did: insubordination. At that point, Payne needed to "produce 'specific, substantial evidence of pretext.'" *Id.* at 890, *quoting Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir.1983). In other words, Payne could no longer rely on his prima facie case; he needed to "tender a genuine issue of material fact as to pretext in order to avoid summary judgment." *Id.* (citations omitted). This burden is hardly an onerous one: "'the plaintiff [who has established a prima facie case] need produce very little evidence of discriminatory motive to raise a genuine issue of fact' as to pretext." *Warren v. City of Carlsbad*, 58 F.3d 439, 443 (9th Cir.1995) (alteration in original), *quoting Lindahl v. Air France*, 930 F.2d 1434, 1437 (9th Cir. 1991), *cert. denied*, — U.S. —, 116 S.Ct. 1261, 134 L.Ed.2d 209 (1996).

In *Washington v. Garrett*, 10 F.3d 1421, 1434 (9th Cir.1993), we held that "fundamentally different justifications for an employer's action would give rise to a genuine issue of fact with respect to pretext since they suggest the possibility that neither of the official reasons was the true reason." *See also*

*Nidds v. Schindler Elevator*, 103 F.3d 854, 859 n. 2 (9th Cir.1996). Payne argues that Norwest's varied reasons for why it terminated him and the close proximity in time between his MHRC complaint and his termination give rise to an issue of triable fact.

Norwest's stated reason for terminating Payne changed several times over a period of only a few months. First, John Koppelman, Payne's supervisor, told Payne on February 9, 1994, that Norwest terminated him for violating the "attorney-client privilege" by taping a message left on his voice mail that was not intended for him. On February 16, Norwest told Payne that it fired him for his "insubordination." On February 24, Norwest told Payne that his violation of the "Code of Ethics" led to his termination, because he "used confidential, corporate owned information for [his] own personal gain." In a June 1, 1994, deposition, Koppelman stated that Norwest fired Payne because Payne "threatened" Koppelman by indicating that the taped voice-mail message would show that Koppelman had lied, and that this "threat" was insubordinate. Koppelman also said in the deposition that the "tape incident" was the "last straw" in a series of insubordinate actions by Payne.

Norwest responds that all of the stated reasons for Payne's termination were forms of insubordination. Yet these are still different reasons stated at different times. Indeed, there are substantial differences: an alleged violation of the attorney-client privilege (which this clearly was not) is not the same as threatening Koppelman's credibility. A rational trier of fact could find that these varying reasons show that the stated reason was pretextual, for one who tells the truth need not recite different versions of the supposedly same event. It may be that Norwest's shifting explanations are acceptable when "viewed in the context of other surrounding events." *Payne*, 911 F.Supp. at 1310. However, such weighing of the evidence is for a jury, not a judge. *See Abdul–Jabbar v. General Motors Corp.*, 85 F.3d 407, 410 (9th Cir.1996) ("We are not to weigh the evidence or determine the truth of the matter, but only to determine whether there is a genuine issue for trial.").

Each side shall bear its own costs on appeal.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.